UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DEBORAH A. KNOTT,

    Plaintiff,

v.                                         Case No:   3:15-cv-1231-J-DNF

CAROLYN COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

## OPINION AND ORDER

Plaintiff, Deborah A. Knott, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989).  There are two ways in which the ALJ may make this determination.  The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE").  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C.  Procedural History

Plaintiff filed applications for a period of disability, DIB, and SSI on January 4, 2012.  (Tr. 164-69).  Plaintiff's application for a period of disability and DIB specified an alleged onset date of March 22, 2010, and her application for SSI specified an alleged onset date of March 22, 2011.  (Tr. 164, 166).  Plaintiff's applications were denied initially on March 28, 2012, and upon reconsideration on June 8, 2012.  (Tr. 86-90, 92-97, 98-102, 104-08).  Plaintiff requested a hearing and on October 15, 2013, a hearing was held before Administrative Law Judge Robert Droker ("the ALJ").  (Tr. 29-49).  On November 11, 2013, the ALJ entered an unfavorable decision finding that Plaintiff was not disabled from March 22, 2011, through the date of the decision.  (Tr. 14-28).  Plaintiff appealed the ALJ's decision and, on August 17, 2015, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-7).  Plaintiff initiated the instant suit by Complaint (Doc. 1) filed on October 15, 2015.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 22, 2011, the alleged onset date.  (Tr. 16).  At step two, the ALJ found that Plaintiff had the following severe impairments: disorders of the spine, neuropathy, shoulder disorder and fibromyalgia.  (Tr. 16).  At step three, the ALJ found that

Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17).

Before proceeding to step four, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant must be afforded the opportunity to alternate between sitting and standing; she must avoid ladders, unprotected heights and the operation of heavy moving machinery; she must only occasionally bend, crouch, kneel or stoop; she must avoid squatting, crawling, operating foot controls and the pushing or pulling of arm controls; and she must be allowed to use a single-point cane for ambulation..

(Tr. 17). At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work as a delivery route truck driver, bus driver, van driver, or delivery driver, prescriptions. (Tr. 22). At step five, the ALJ relied on the testimony of a vocational expert to find that there are jobs that exist in significant numbers that Plaintiff could perform. (Tr. 23). Specifically, the vocational expert identified such jobs as ticket seller, cashier II, storage rental clerk, addresser, and surveillance system monitor. (Tr. 23). The ALJ concluded that Plaintiff was not under a disability from March 22, 2011, through the date of the decision, November 1, 2013. (Tr. 24).

## II.     Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by failing to accurately and fairly assess the propriety of Plaintiff's pursuit of treatment; (2) whether the ALJ erred by mischaracterizing the evidence; and (3) whether the ALJ erred by failing to substantially evaluate Plaintiff's activities of daily living. The Court will address the first two issues together and the rest in turn.

> **a) Whether the ALJ erred by failing to accurately and fairly assess the propriety of Plaintiff's pursuit of treatment.**

Plaintiff argues that the ALJ's decision was based on the mistaken assumption that Plaintiff acted in an ill-behaved manner by pursuing prescribed medications over recommended medical procedures. (Doc. 22 p. 14). First, Plaintiff argues that the ALJ inaccurately found that Plaintiff had "declined" trigger point injections that were offered by Dr. Trivedi. (Doc. 22 p. 14). Second, Plaintiff contends the ALJ mischaracterized the record by finding that Plaintiff declined the recommended treatments of Dr. Trivedi until Dr. Jaleel filled in for him. (Doc. 22 p. 15). Finally, Plaintiff argues that the ALJ criticized Plaintiff for asking to be discharged against medical advice while at St. Vincent's Medical Center. (Doc. 22 p. 15). Plaintiff notes that evidence submitted to the Appeals Council provides relevant evidence as to Plaintiff's decision to be discharged, namely that an IV was accidentally pulled out of her arm causing her great distress prompting her to leave. (Doc. 22 p. 16). Plaintiff notes that she subsequently called for rescue services to take her to Baptist Medical Center. (Doc. 22 p. 16). Plaintiff contends that the ALJ did not build an accurate or logical bridge between the evidence and his conclusion. (Doc. 22 p. 16). In response, Defendant argues that the ALJ accurately discussed the relevant medical evidence in finding that Plaintiff could perform a reduced range of light work. (Doc. 26 p. 5).

Here, the Court finds that Plaintiff has failed to show that the ALJ erred in his characterization of the evidence. The ALJ noted in his decision that Dr. Trivedi advised Plaintiff to undergo trigger point injections and joint and bursa injections, but Plaintiff declined. (Tr. 19). Dr. Trivedi's progress notes from May 22, 2012, June 13, 2012, and June 26, 2012, show that Dr. Trivedi had recommended trigger point injections, but Plaintiff stated that she wanted to "think and decide about it." (Tr. 715, 719, 722). The record does not contain any evidence showing Plaintiff obtained trigger point injections per Dr. Trivedi's recommendation, and Plaintiff does not

allege that she has. While Plaintiff did not outright "decline" trigger point injections, the ALJ's wording is not altogether inaccurate, given there is no evidence Plaintiff followed his treatment recommendation. Accordingly, the Court finds no error in this statement by the ALJ.

Likewise, the Court does not find that remand is warranted for Dr. Trivedi's observation that Plaintiff declined recommended treatment and instead obtained additional medication. (Tr. 19). Dr. Trivedi's notes show that in May 2012, Dr. Trivedi scheduled the EMG nerve conduction studies, advised Plaintiff to get the MRIs done, and prescribed Tramadol. (Tr. 715). Dr. Trivedi again advised Plaintiff to get the EMG nerve conduction studies and the MRIs done on June 13, 2012, and June 26, 2012. (Tr. 719, 722). The record, at the time the ALJ entered his decision, did not contain any evidence showing Plaintiff underwent the EMG nerve conduction study or obtained an MRI as Dr. Trivedi advised.

In support of her argument that the ALJ erred by failing to accurately and fairly assess the propriety of Plaintiff's pursuit of treatment, Plaintiff now points to evidence submitted to the Appeals Council after the ALJ's decision that Plaintiff obtained an MRI of the lower back on June 14, 2014, at Baptist Medical Center. (Tr. 6, 736, 791-92, 794-95, 797-99). This evidence, which was not submitted until after the ALJ entered his decision, cannot show that the ALJ improperly considered the evidence. In the same way, Plaintiff's argument that the ALJ erred by failing to realize Plaintiff left St. Vincent's Medical Center due to an IV being accidentally pulled out of her arm is not well founded. The evidence explaining why Plaintiff left St. Vincent's Medical Center was not before the ALJ at the time he entered his decision, but submitted to the Appeals Council afterwards.

### b) Whether the ALJ erred by mischaracterizing the evidence.

Plaintiff argues that the ALJ mischaracterized the treatment records from Dr. Czerkawski and the Baptist Medical Center by suggesting that they acted as pill pushers. (Doc. 22 p. 17). Additionally, Plaintiff contends that the ALJ's mention of "largely normal" objective testing at the Baptist Medical Center is misleading as the ALJ failed to acknowledge the objective medical evidence of record documenting Plaintiff's impairments. (Doc. 22 p. 18). Plaintiff argues that the ALJ"s portrayal of Plaintiff as steadfastly pursuing pain medications significantly contributed to the ALJ's determination that inaccurately discounted the severity of Plaintiff's pain. (Doc. 22 p. 19). In response, Defendant argues that the ALJ properly considered the records from Dr. Czerkawski and Baptist Medical Center and accurately described what was contained in the medical records. (Doc. 26 p. 7).

Here, contrary to Plaintiff's arguments, the ALJ did not misconstrue the record from Dr. Czerkawski and Baptist Medical Center but simply described what was contained in the medical records. The ALJ noted that in May 2012, Dr. Czerkawski prescribed a small dose of pain medications due to a concern about controlled substance abuse. (Tr. 21, 449). The ALJ's statement is consistent with Dr. Czerkawski's note, which states "we'll give a small dose of hydrocodone concerned about the controlled substance abuses above." (Tr. 21, 449).

Further, the ALJ considered the July 2013 records from Baptist Medical Center. (Tr. 20, 570-2). The ALJ noted that Plaintiff presented to Baptist Medical Center in July 2013 after a fall, but that objective testing was largely normal. (Tr. 20, 570-72). On examination, Plaintiff had a non-tender back, with normal range of motion and normal alignment. (Tr. 572). Plaintiff demonstrated a normal range of motion, normal strength, and intact cranial nerves II through XII, as well as normal sensory and motor examinations. (Tr. 572). Additionally, the July 2013

imaging scans of Plaintiff's left shoulder, chest, and both hips were negative. (Tr. 20, 573-75). Plaintiff asserts that MRIs provide greater information than x-rays and that the ALJ did not consider Plaintiff's April 2011 MRI, but the ALJ's decision shows he considered the April 2011 MRI and specifically noted that it revealed disc protrusions at T6-7 and T7-8, with mild to moderate indentation on the spinal cord at T6-7, and mild dural sac indention at T7-8. (Tr. 18).

The ALJ properly discussed the relevant medical evidence in determining Plaintiff's RFC. Accordingly, the Court finds no error in the ALJ's treatment of the medical record from Dr. Czerkawski and Baptist Medical Center.

### c) Whether the ALJ erred by failing to substantially evaluate Plaintiff's activities of daily living.

Plaintiff argues that the ALJ erred by improperly characterizing Plaintiff's activities of daily living. (Doc. 22 p. 19). Plaintiff contends that the ALJ overlooked the totality of Plaintiff's testimony concerning her daily activities which provided clarification on how her activities were limited. (Doc. 22 p. 19). Plaintiff notes that her testimony indicated that her life activities were performed on a very limited basis. (Doc. 22 p. 20). In response, Defendant argues that the ALJ properly considered Plaintiff's daily activities in evaluating her subjective complaints. (Doc. 26 p. 15).

Here, the Court finds no error in the ALJ's treatment of Plaintiff's activities of daily living. Although not dispositive, a claimant's activities may show that the claimant's symptoms are not as limiting as alleged. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The ALJ noted that Plaintiff was able to provide childcare for her 14-month-old grandchild while her daughter was at work. (Tr. 20, 36). Plaintiff contends that the ALJ overlooked the fact that Plaintiff's mother also helps with childcare activities. While the ALJ did not state this fact in his decision, his finding that Plaintiff provided childcare was not inaccurate. Further, the ALJ noted

that Plaintiff reported that she performed housework, such as cooking, vacuuming, sweeping, and taking out the trash, read books and news online, watched television, listened to the radio, did word search puzzles, used the computer, used Facebook occasionally, crocheted, and went to the grocery store twice a month. (Tr. 20, 36-38). Plaintiff also saw her friends and relatives once a week, drove once a week, and dressed herself. (Tr. 20, 38-39).

The ALJ's description of Plaintiff's activities of daily living was not inaccurate or unfair. Accordingly, the Court finds no basis for remand.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 22, 2017.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties